## JACOB ELLIS
### *v.*
## THE CONRAD SEIPP BREWING COMPANY *et al.*

*Opinion filed February 17, 1904.*

1. DEBTOR AND CREDITOR—*creditor must protect the security held for the debt.* It is the right and duty of a creditor to diligently guard and protect the effects in his hands held as security for the debt.

2. CONTRACTS—*when contract is not an absolute release of liability.* A written contract which provides for a conditional release of liability will not be held an absolute release, where it is not shown the contract contained·any mistake or was obtained by fraud.

*Ellis* v. *Conrad Seipp Brewing Co.* 107 Ill. App. 139, affirmed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is a bill for an accounting and relief, filed in the superior court of Cook county by the plaintiff in error, Jacob Ellis, against the defendants in error, Jacob Wolfe and the Conrad Seipp Brewing Company.

On July 6, 1891, Ellis became indebted to the brewing company in the sum of $1000, secured by trust deed to Theodore Oehne, trustee, conveying his homestead in the city of Chicago, at a place known as Roseland. Ellis had a brother who was also indebted to said brewing company in the sum of $800, and on October 6, 1891, Ellis gave his note to secure this indebtedness. Upon these two notes $400 was paid, leaving $1400 balance due. On October 4, 1892, Ellis and Wolfe leased certain vacant lots on Cottage Grove avenue, in Chicago, for a term of fifteen years, and erected thereon a building, consisting of five store rooms on the ground floor and a hotel on the second floor. This building cost $14,500, and $5000 of that amount was borrowed from the brewing company, to be re-paid in five annual installments of $1000 each, three of which were paid as they became due, leaving

$2000 unpaid. This last piece of property is known in this record as the "Burnside property." On December 17, 1896, the brewing company obtained judgment against Ellis for the sum of $2043, being the balance due on the $1400 individual notes of Ellis, and an execution was levied upon the undivided one-half interest of Ellis in the Burnside property. This levy resulted in a conference between Ellis, Wolfe and the brewing company, in which a settlement was agreed upon. Two written agreements were there signed. One was between Ellis and Wolfe, which provided that in consideration of Ellis having conveyed to Wolfe all of his interest in the Burnside property, Wolfe was to assume all indebtedness due upon said property, and Wolfe was also to assume, as soon as said building could be sold by him, and not before, the judgment obtained by the brewing company against Ellis for $2043, and Wolfe was also to assume the payment of the $2000 which Wolfe and Ellis owed to the brewing company. The other agreement was between Wolfe, Ellis and the brewing company, and provided that in consideration of Wolfe having on that date delivered to the brewing company his note for $3596.25, secured by a chattel mortgage executed by him, also partly secured by the trust deed from Ellis and wife to the brewing company on their homestead, and also further secured by the judgment of said brewing company against Ellis for $2043, the brewing company, upon the payment by Wolfe of said note for $3596.25, was to release to Wolfe and Ellis each of said securities, and if, prior to the payment of said note for $3596.25 by Wolfe, Ellis should pay said brewing company the amount due it upon the trust deed executed by Ellis upon his home place, then the brewing company was to release to Ellis his homestead, and credit upon the note of $3596.25 the amount of the payment as made by Ellis. Ellis claims that it was his understanding that these contracts entirely liquidated his indebtedness to the brewing company, and that he made several

requests for the return of his papers, but did not succeed in getting them. About six weeks after the contracts were executed Wolfe failed to pay the ground rent and taxes on the Burnside property and the same were paid by the brewing company at Wolfe's request, and on May 7, 1897, Wolfe executed his note to the brewing company for $675 to secure this payment, and also assigned the rents of the Burnside premises to the brewing company. Upon this note of $675 and the note of $3596.25 default was made in payment, and on August 24, 1897, judgment was entered for $4472.96. In April, 1899, Ellis' homestead in Roseland was destroyed by fire, and the loss adjusted at $1407. Before the money was paid to Ellis the brewing company garnisheed the insurance companies upon the above judgment, and Ellis filed this his bill for relief.

The bill alleges the facts as above set forth, prays for an accounting, and that Wolfe be ordered to pay whatever is found due, and that upon his failure so to do, the brewing company be required to foreclose its trust deed upon the Burnside property, and if enough is not realized from said foreclosure, complainant offers to pay the balance. A decree was rendered upon the hearing, adjusting the rights of the respective parties, from which decree an appeal was taken to the Appellate Court for the First District, where the decree was affirmed, and by this writ of error the cause has been brought to this court.

SAMUEL J. HOWE, for plaintiff in error.

WINSTON, PAYNE & STRAWN, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The decree is quite lengthy and finds the facts as above set forth. There are but three points raised in this court, and only such parts of the decree as involve these questions need be considered.

It is first insisted by plaintiff in error that by the contract entered into between Ellis, Wolfe and the brewing

company Ellis was to be released of liability and Wolfe was to be responsible for the debt. In support of this contention plaintiff in error offered oral testimony as to certain conversations which took place prior to the making of the contracts, but the record shows that all of these conversations were merged into the two written agreements. The evidence does not show that these written agreements contained any mistake or were obtained by fraud. They are therefore binding upon the plaintiff in error, and the contracts, upon their face, do not sustain the contention in that regard.

The decree found that to the extent of $1830.36, with interest, Ellis was indebted to the brewing company as surety for Wolfe, and that the net amount of rents collected by the brewing company was $391.03, and that this should be applied in paying the note of $675 made by Wolfe. This part of the decree, it is insisted, is an attempt to hold Ellis' property to cover future advances made by the brewing company to Wolfe, and that to the extent of at least one-half of the net rents collected on the Burnside property Ellis was entitled to credit on the debt for which he was found to be security for Wolfe. We do not think this contention is sustained by either the law or the evidence. The contract released Ellis only upon certain conditions. Before these conditions were complied with, Wolfe defaulted in the payment of the ground rent and taxes to the extent of $675. A part of this default was before the contracts were made. If this sum was not paid the whole property would be forfeited and lost to all parties. Wolfe had no money to make the payment, and to prevent the loss the brewing company made the payment and Wolfe assigned the rents as surety. It is the duty of a creditor to diligently guard and protect effects in his hands for the security of his debt, and the application by the brewing company of the rents towards the discharge of the note given for back ground-rent and taxes was a proper and lawful action

on the part of the creditor to protect the surety held by it, and of this provision in the decree plaintiff in error had no ground to complain.

The decree further provides that if, upon the foreclosure sale ordered to be made, enough was not realized to pay the sum of $4495.20, with interest at five per cent, then Ellis' insurance money, or so much of it as should be necessary to cover the deficit, should be applied to that purpose. It is insisted that this part of the decree is wrong, for the reason that the judgment which was rendered against Wolfe on the note he gave at the time Ellis made the conveyance to him, included $100 attorney's fees, and it was manifestly improper to hold that Ellis should be charged with the payment of attorney's fees incurred in entering judgment against Wolfe on his personal note for $675. An examination of the assignment of error shows that this point was not made in the Appellate Court and is raised in this court for the first time, and there is no assignment of error in this court upon which it can be based. We have, however, examined the decree in this respect, and find that the total amount due on said judgment, including attorney's fees, was found to be $5310.96, of which $4495.20 was due on account of the note representing the joint liability of Wolfe and Ellis, and the balance was due upon the note representing Wolfe's individual indebtedness. It does not appear how the attorney's fee of $100 was charged on these notes. For anything appearing in the record, the fee may have been included in the $815.76 found to be the amount due upon Wolfe's individual note. But even if the $100 is charged as plaintiff in error claims, Ellis was clearly liable therefor, the note which he gave providing for an attorney's fee of $100 in case of judgment being entered thereon. For these reasons we find no error in the decree in this respect.

The decree of the superior court and of the Appellate Court will therefore be affirmed.      *Decree affirmed.*