In the Matter of Charles B. DREWRY and Julie M. Drewry, Debtors–Appellants.

No. 91–1372.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1992.

Decided June 24, 1992.

Walter Chidester, Richmond, Ind., for appellee Metropolitan Life Ins. Co.

William Elliott, LaPorte, Ind., for appellee Production Credit Ass'n, LaPorte.

David M. Austgen, O'Drobinak, Dywan & Austgen, Crown Point, Ind., for appellee First Bank of Whiting.

Martin H. Kinney, William L. Touchette (argued), Merrillville, Ind., for appellees Maurice Busselberg and Inell Busselberg, deceased and succeeded by her son Paul Busselberg.

Lambert C. Genetos, Burke, Murphy, Costanza & Cuppy, Merrillville, Ind., for appellee Bank of Indiana.

Lawrence A. Kalina, Spangler, Jennings & Dougherty, Merrillville, Ind., for appellees Conagra, Inc. and Grower Service, Inc.

David A. Rosenthal (argued), Lafayette, Ind., for debtor-appellant.

Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

On March 6, 1985, Charles and Martha Drewry filed a Chapter 11 bankruptcy petition. The Drewrys owned as tenants in common with Maurice and Inell Busselberg a tract of farmland in Indiana. After the petition was filed and before the bankruptcy court abandoned the Drewrys' interest in the farmland in 1989, Maurice Busselberg collected rents on the farmland. Busselberg collected these rents for the 1985, 1986 and 1987 crop years. The sole issue on appeal is whether the United States Bankruptcy Court and the United States District Court correctly found that the Drewrys, the Debtors, failed to carry their burden of proof on an 11 U.S.C. § 542[1] claim to the postpetition rents Maurice Busselberg collected. We affirm.

## BACKGROUND FACTS

This appeal revolves around 966 acres of farmland known as Sunnybrook Farm in Lake County, Indiana. Maurice Busselberg began renting Sunnybrook Farm in 1946. In September 1974, Busselberg asked his friend Charles Drewry and Charles's wife, Martha, if they were interested in purchasing Sunnybrook Farm with him and his wife, Inell. The Drewrys and Busselbergs agreed to purchase Sunnybrook Farm. On the day of the purchase, each couple paid $100,000 in cash and took out a joint mortgage for the balance, $635,000, from the Federal Land Bank of Louisville ("Federal Land Bank"). The Drewrys and the Busselbergs pledged the 966 acres as security for their debt. The mortgage was recorded on January 3, 1974.

---

1. 11 U.S.C. § 542(a) states:
   (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The Drewrys and the Busselbergs held Sunnybrook Farm as tenants in common, but each couple individually held their undivided one-half interest in the farm as joint tenants with the right of survivorship in spouses. After the purchase, the Busselbergs continued to farm the land. The Drewrys paid one-fourth of all farming expenses and received one-fourth of all profits from the farming. The Drewrys and the Busselbergs agreed to split equally the costs of any improvements. This agreement between the parties was oral.

Well before purchasing Sunnybrook Farm with the Busselbergs, the Drewrys entered into a trust with Bank of Indiana, now Bank One. Trust No. 5747 provided that Bank One as trustee was to pay the net income of the trust estate to the grantor, Charles Drewry, as directed in writing during Charles Drewry's lifetime. By January 1, 1983, the Drewrys had placed their undivided one-half interest in Sunnybrook Farm in Trust No. 5747.

On December 28, 1982, the Drewrys, the Busselbergs and Bank One as trustee of Trust No. 5747, executed an agreement which stated the remaining balance on the Federal Land Bank mortgage to be $443,865.73. The agreement was executed in order to establish the parties' equity in Sunnybrook Farm and to permit the Busselbergs to prepay their portion of the mortgage. The agreement stated that the Busselbergs would retain a security interest in the property, in addition to their ownership interest. Unfortunately, as it will be seen, the Busselbergs failed to record this security interest. The agreement also granted the Busselbergs the right to pay off the portion of liability owed by the defaulting parties following an appraisal of the property in the event of a default by the Drewrys. The Busselbergs' equitable interest would then be increased by an amount equal to that paid, while the defaulting parties' equity would be decreased in the same amount. Finally, the agreement provided that if the Busselbergs assumed the Drewrys' liability under the Federal Land Bank mortgage due to the Drewrys' default, the Drewrys would assign 100% of their beneficial interest in Trust No. 5747 to the Busselbergs. Subsequent to this agreement, the Drewrys were to make all remaining payments due to the Federal Land Bank on the mortgage.

After entering into this agreement with the Busselbergs, the Drewrys, on July 8, 1983, established a land trust No. 1788 in the First Bank of Whiting ("Whiting Bank"). Trust No. 1788 provided the Drewrys owned a 100% beneficial interest in the trust. Under the trust agreement, Whiting Bank had the duty to (1) hold the title to the trust property until directed to convey it or until divested of title; (2) follow the directives of the beneficiaries; (3) forward or give notice of all legal documentation and other information concerning or affecting the property; and (4) execute and transmit all deeds, mortgages, notes, options, easements, leases and other instruments relating to or affecting the property upon receiving the directive of the beneficiary or other authorized person. The Drewrys then transferred their undivided one-half interest in Sunnybrook Farm, which was in Bank One Trust No. 5747, to Whiting Bank as trustee for Trust No. 1788. Finally, on July 8, 1983, the Drewrys assigned their 100% beneficial interest from Trust No. 1788 to Whiting Bank to serve as collateral for over three million dollars in loans. On August 17, 1983, and August 30, 1983, Whiting Bank filed documents perfecting its security interest. On October 4, 1983, Bank One issued a Trustee's Deed in favor of Whiting Bank as trustee under Trust No. 1788 releasing and quitclaiming to Whiting Bank all property held in Trust No. 5747.

Without notifying the owner of the undivided one-half interest, Whiting Bank, the Drewrys entered into a farm lease of their undivided one-half beneficial interest in Sunnybrook Farm with Busselberg Farms, Incorporated ("BFI") as lessee on September 1, 1984. BFI at that time was a corporation with Paul Busselberg, Maurice's son, and Paul's wife as the sole shareholders. Under the terms of the lease, the Drewrys leased their share of Sunnybrook Farm to BFI for three years with the right of renewal for five successive three-year terms.

Rent each year was $105.00 per tillable acre. The parties agree that 916 of the 966 acres in Sunnybrook Farm are tillable, so the Drewrys' share was 458 acres. The lease agreement also provides the Drewrys would pay the real estate taxes on their half of the estate. BFI gave Charles Drewry a $20,000 rent prepayment, which was to be credited towards rent due in 1985. Also on September 1, 1984, Maurice Busselberg orally leased the remaining one-half divided interest in Sunnybrook Farm to BFI for an annual rent of $65.00 per tillable acre. The rents collected by Maurice Busselberg from BFI during this three-year period, 1985, 1986, and 1987, are at issue in this appeal.

Before the November 1984 real estate tax payment on Sunnybrook Farm was due, Drewry told Maurice Busselberg that he could not pay the taxes due. Busselberg paid the taxes in order to avoid tax foreclosure on the property. After Busselberg paid the tax installment, Drewry again approached Busselberg and told him he could not pay the Federal Land Bank mortgage payment which was due on December 29, 1984. Maurice Busselberg told Drewry that he would "take care of it," and on January 2, 1985, Maurice Busselberg paid off the entire remaining balance on the Federal Land Bank mortgage. Busselberg paid over $188,000 even though the payment due was only $61,000. Federal Land Bank released the mortgage on Sunnybrook Farm on January 15, 1985.

Before Maurice Busselberg paid off the remainder of the Drewrys' liability under the Federal Land Bank mortgage, Busselberg and his attorney had a meeting with Whiting Bank's attorney and a bank officer on December 10, 1984. During the meeting, Maurice Busselberg learned for the first time of Whiting Bank's claim to a 100% beneficial interest in Trust No. 1788. Whiting Bank learned for the first time of the December 28, 1982, agreement between the Drewrys and the Busselbergs in which the Drewrys agreed to assign to the Bus-

selbergs 100% of the their beneficial interest in Sunnybrook Farm (the agreement stated that the beneficial interest was in Bank One Trust No. 5747) should the Busselbergs pay off the Drewrys' share of the Federal Land Bank mortgage. At the meeting, Busselberg's attorney informed the group that Maurice Busselberg intended to pay off the mortgage.

After paying off the balance of the mortgage, Maurice Busselberg had Sunnybrook Farm appraised in accordance with the December 28, 1982, agreement. As of March 1, 1985, the farm's appraised value was $1,159,200.00, but after discounts the appraisers valued the farm at $772,800.00. The Drewrys assigned to the Busselbergs the 100% beneficial interest in their undivided one-half interest in Sunnybrook Farm from Trust No. 5747 according to the terms of the December 28, 1982, agreement. The trial testimony indicates that the assignment took place on February 28, 1985, in Maurice Busselberg's attorney's office.[2] When the Drewrys made the assignment, Charles Drewry was aware that he had already transferred the beneficial interest in Sunnybrook Farm from Bank One Trust No. 5747 to Whiting Bank Trust No. 1788 in order to secure a substantial loan. He did not, however, tell the Busselbergs about the transfer. Charles and Martha Drewry filed a Chapter 11 bankruptcy petition on March 6, 1985.

At trial Drewry testified he could not remember whether he informed Maurice Busselberg that he would probably file bankruptcy before Maurice Busselberg paid off the Drewrys' portion of the Federal Land Bank mortgage on Sunnybrook Farm. Neither did Drewry inform Busselberg of over $606,000.00 in agreed judgments entered against Drewry before Busselberg paid off the mortgage, even though Drewry knew that the judgments would become a lien on any real estate Drewry owned.

**2.** There is an inconsistency. Both the United States Bankruptcy Court Order, dated April 5, 1989, and the Memorandum and Order of the United States District Court on appeal, dated

January 14, 1991, indicate that the assignment took place on October 28, 1985. But, the trial testimony and the Plaintiffs' exhibit shows the date of the assignment to be February 28, 1985.

In an Order and Judgment dated April 5, 1989, 99 B.R. 906, Judge Rodibaugh determined the nature and priority of liens in real estate owned by the Drewrys and held in Trust No. 5747 and Trust No. 1788. Judge Rodibaugh explained that usually when the title to trust property and the entire beneficial interest become united in one person, the trust terminates. On July 8, 1983, Whiting Bank held both the title to the Drewrys' undivided one-half interest in Sunnybrook Farm as well as the Drewrys' 100% beneficial interest in the undivided one-half interest. Judge Rodibaugh decided, however, the intent of the parties was not to make the assignment absolute; rather, the assignment was part of a financing arrangement. Therefore, Trust No. 1788 did not terminate when the Drewrys assigned their 100% beneficial interest to Whiting Bank as security for loans. The bankruptcy court then concluded that Whiting Bank had a secured interest in the property held in Trust No. 1788, while the holders of the judgment liens were unsecured creditors against the debtors' estate. Because the Busselbergs failed to record their security interest when they received it on December 28, 1982, the Busselbergs forfeited their first secured position in the Drewrys' undivided one-half interest. The court also observed that by failing to conduct a title search prior to paying off the balance of the mortgage to the Federal Land Bank, Maurice Busselberg became a "volunteer." Accordingly, the Busselbergs' claim in the amount of $188,053.03 was unsecured. The court then explained that any remaining interest the Drewrys had in Sunnybrook Farm by virtue of their beneficial interest in Whiting Bank Trust No. 1788 was of inconsequential value and benefit to the estate and should be abandoned to Whiting Bank under the abandonment provisions of the Bankruptcy Code. Judge Rodibaugh then decided that Whiting Bank's interest was subject to an equitable lien in the amount of $58,050.56 for one-half the taxes, insurance and repairs the Busselbergs paid in preserving the value of the farm. Last, the bankruptcy court denied the Drewrys' claim to postpetition rents collected by Maurice Busselberg from BFI (his son's corporation) between the years of 1985 and 1987.

On appeal to the district court, the Drewrys contended the bankruptcy court erred in determining they were not entitled to rental fees by virtue of the September 4, 1984, farm lease. The district court, however, agreed with the bankruptcy court. The district court pointed out that by the time the Drewrys attempted to lease their one-half interest in Sunnybrook Farm to BFI, the Drewrys had already assigned their beneficial interest in Trust No. 1788 to Whiting Bank as security for debt to Whiting Bank. Consequently, the district court decided the Drewrys did not have sufficient legal interest to enter into the lease in the first place and could not collect rents flowing from it. The district court's order affirming the bankruptcy court was entered on January 14, 1991.

The Drewrys have now appealed to this court.

## ANALYSIS

The answer to the question on appeal turns on whether the interest the Drewrys had in Trust No. 1788 is property of the estate under 11 U.S.C. § 541(a). If it is then the estate is entitled to the rents Maurice Busselberg collected from BFI for the crop years 1985, 1986 and 1987—or at least some of it. If not, Busselberg does not have to turn over the rents. The issue here on appeal concerns the district court's conclusion of law. Therefore the appropriate standard of review is *de novo*. *Calder v. Camp Grove State Bank*, 892 F.2d 629, 631 (7th Cir.1990).

It is undisputed that before the Drewrys filed a bankruptcy petition BFI entered into a lease with the Drewrys to farm their undivided one-half interest in Sunnybrook Farm; that the Drewrys owned a 100% beneficial interest in the undivided one-half interest in the real estate titled in a land trust while the beneficial interest was secured in favor of Whiting Bank against loans; and that Maurice Busselberg received rents from BFI for 75% of Sunnybrook Farm for the crop years 1985, 1986 and 1987. Busselberg received $65.00 an

acre per year from BFI for 75% of the tillable acres (916 acres) in Sunnybrook Farm. Paul Busselberg paid no rent on the 25% interest he had inherited from his mother, Inell Busselberg.

> According to 11 U.S.C. § 542(a):
>
> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The Drewrys argue that during the three years after they filed for bankruptcy and until the bankruptcy court determined that the Drewrys' one-half undivided interest was of no value to the estate, Busselberg collected rents from BFI to which the Drewrys had a claim, either under the lease which they entered into with BFI, or as tenants in common with Maurice Busselberg.

Busselberg rejoins that when the Drewrys entered into the lease of their interest in Sunnybrook Farm with BFI they never attempted to contact the trustee of that interest, Whiting Bank. Thus the lease between the Drewrys and BFI was invalid. Busselberg says because the lease was invalid the Drewrys created a significant restriction on their ability to transfer their beneficial interest in Trust No. 1788, which was enforceable under applicable nonbankruptcy law. Consequently, even though the beneficial interest might have been considered property of the estate under 11 U.S.C. § 541(a), which the postpetition rents would follow pursuant to 11 U.S.C. § 542(a), the exception found in 11 U.S.C. § 541(c)(2), stating "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title," applies taking the interest out of the bankrupt estate.

We first tackle the Drewrys' claim to rents flowing from the lease which they entered into with BFI. Both the bankrupt-cy court and the district court on appeal held that the lease was invalid from its inception. The bankruptcy court concluded that Drewry had no beneficial interest to lease to BFI because Drewry had already assigned his entire beneficial interest in Sunnybrook Farm to Whiting Bank as security for a debt. Moreover, the district court supplied as an additional reason that Drewry's lease to BFI was of questionable validity because Drewry failed to contact the trustee, Whiting Bank, before executing the lease. The district court stated, "the facts simply do not support the Drewrys' legal ability to lease [their interest in] the 966 acres and to collect rental fees from Busselberg Farms, Inc." We have a little different view of this complicated situation.

■ The terms of Trust No. 1788 clearly state that Whiting Bank as trustee of the title to the real estate had the power to execute and transmit all deeds, mortgages, notes, options, easements, leases and other instruments relating to or affecting the property in Trust No. 1788 upon receiving the directive of the beneficiary or other authorized person. Yet, Drewry testified that he entered into a lease agreement with BFI for $105.00 per tillable acre of the Drewrys' undivided one-half interest in Sunnybrook Farm without ever notifying Whiting Bank. Because Trust No. 1788 was a land trust, Drewry was entitled to enter into a lease agreement without notifying the trustee. Indiana law recognizes land trusts, trusts consisting solely of real property which the beneficiary retains the power to manage, as well as the power to direct the trustee to sell, the trust property. Ind.Code § 30–4–2–13. Although there seems to be no Indiana law directly on point, there is some helpful Illinois guidance on the issue, and land trusts originated in Illinois.

The law concerning land trusts in Indiana does differ from Illinois law in some ways. Namely, in Illinois, the beneficiary of a land trust holds neither legal nor equitable title in the trust; the beneficiary holds a personal property interest. *See* Anthony Haswell and Barbara B. Levine, *The Illinois Land Trust: A Fictional Best*

242

*Seller,* 33 DePaul L.Rev. 277, 282 (1984). Since the beneficiary's interest is personal property, judgments cannot attach. *See Citicorp v. Bank of Lansing,* 604 F.Supp. 585, 588 (N.D.Ind.1984). Under Indiana law, the beneficiary takes an equitable interest in the trust property. Ind.Code § 30–4–2–7. And under Indiana law, the beneficiary's equitable interest is subject to a judgment lien. *Citicorp,* 604 F.Supp. at 589. However, both Illinois and Indiana law classify the beneficiary's interest in the trust property as personal property, and both states recognize the beneficiary's power to control, manage and use the property in the trust. It is the feature of management and control that dictates the beneficiary's right to lease and receive rents. *See Southeast Village Associates v. Health Management Associates,* 92 Ill. App.3d 810, 48 Ill.Dec. 294, 296, 416 N.E.2d 325, 327 (1st Dist.1981); *Klein v. Ickovitz,* 121 Ill.App.2d 191, 257 N.E.2d 187 (1st Dist.1970). Therefore, the validity of the Drewrys' lease to BFI was not affected by the fact that the Drewrys failed to direct the trustee, Whiting Bank, to execute the lease instead of simply executing the lease themselves.

Moreover, that the Drewrys had assigned 100% of their beneficial interest in Sunnybrook Farm to Whiting Bank as security for a loan does not mean that they did not have sufficient legal interest to receive rents from a lease. Until the Drewrys defaulted on the loan for which the beneficial interest was assigned as collateral, the Drewrys were entitled to receive rents from a lease of that interest. The bankruptcy court noted that the assignment operated "merely as a secured financing mechanism rather than an unconditional and complete transfer" of interest. Whiting Bank did not receive the Drewrys entire beneficial interest in Sunnybrook Farm until April 5, 1989, when the property was abandoned to Whiting Bank pursuant to 11 U.S.C. § 554(b). Busselberg maintains that Judge Rodibaugh of the bankruptcy court correctly applied "nonbankruptcy law" under 11 U.S.C. § 541(c)(2) to determine Drewry had created a significant restriction on his right to transfer his beneficial interest in Sunnybrook Farm by assigning his beneficial interest to Whiting Bank as collateral for loans. (Judge Rodibaugh did not, however, state in his opinion that he was relying on 11 U.S.C. § 541(c)(2).) In support of this position Busselberg cites *In re Newman,* 903 F.2d 1150 (7th Cir.1990). In *Newman* the court stated in a footnote, "[w]hile there is disagreement about what else it might cover, it is clear that the phrase 'applicable nonbankruptcy law' used in this provision was intended to apply to state law concerning spendthrift trusts such as presented in this case." 903 F.2d at 1152 n. 2. In this case a land trust, not a spendthrift trust, is at issue. Busselberg urges this court to extend *Newman* to cover land trusts as well as spendthrift trusts. Because we do not believe Drewry restricted his right to transfer his beneficial interest by merely assigning that interest as collateral for loans, we do not have to decide whether 11 U.S.C. § 541(c)(2) applies to Indiana land trust law. Now that we have determined that the Drewrys were entitled to receive rents as long as they had a beneficial interest in Sunnybrook Farm, the next question is how long did the Drewrys possess a beneficial interest as against Maurice Busselberg which rents would follow?

The Drewrys' lease to BFI went into effect on November 19, 1984, and the lease covered the crop years 1985, 1986 and 1987. BFI also entered into an oral lease with Maurice Busselberg for his share of Sunnybrook Farm covering the same years as the Drewry lease. After prepaying the Drewrys $20,000, BFI never paid them any more rent. Instead, BFI paid Maurice Busselberg $65.00 an acre for 75% of the 916 tillable acres in Sunnybrook Farm. Paul Busselberg of BFI testified at trial that there were two reasons for his failure to pay. First, Paul believed that the Drewrys had assigned 100% of their beneficial interest to Maurice Busselberg on February 28, 1985, pursuant to the December 28, 1982, agreement between the Busselbergs and the Drewrys when Maurice paid off the Drewrys' portion of the Federal Land Bank mortgage. Second, Paul thought that the Drewrys broke the lease when they failed to pay the real estate taxes on the land as required by the lease.

■ As between the Drewrys and Maurice Busselberg, the assignment of the Drewrys' 100% beneficial interest in Sunnybrook Farm was valid even though Maurice Busselberg did not perfect his security interest when he received it. A security agreement is generally effective according to its terms between parties even when it is unperfected. Perfection is necessary to prevent the interest from being subject to the rights of other creditors. *See generally*, 79 C.J.S. Supp. § 25 (1974). Thus, when Maurice Busselberg paid off the Drewrys' portion of the Federal Land Bank mortgage, the December 28, 1982, agreement provided that the Drewrys would then assign their 100% beneficial interest to Busselberg. The Drewrys did so on February 28, 1985. That the bankruptcy court ultimately abandoned the Drewrys' beneficial interest to Whiting Bank as first secured creditor does not preclude this court from estopping the estate from demanding rents from Busselberg. Whiting Bank may well have a claim to the rents against Maurice Busselberg, but Whiting Bank has not pursued that claim. The estate has no claim against Maurice Busselberg unless the Drewrys do, and the Drewrys have no claim against Maurice Busselberg because the Drewrys assigned their beneficial interest to Busselberg when Busselberg paid off the Federal Land Bank mortgage.

Under this analysis, the Drewrys are entitled to rents from the lease from the lease's effective date, November 19, 1984, until February 28, 1985, the date the Drewrys assigned their beneficial interest to Maurice Busselberg. However, the money BFI prepaid to Drewry under the lease, $20,000, more than covers the amount Drewry would have received. Therefore Drewry, and the estate, get nothing, not an inequitable result in these circumstances.

### CONCLUSION

The judgment of the district court is AFFIRMED.