**In re STOTLER AND COMPANY,
Debtor.**

**Ronald R. PETERSON, not individually,
but solely as the duly appointed trustee
of Stotler and Company, Plaintiff–Appellee,**

**v.**

**Mohammad AKRABAWI,
Defendant–Appellant.**

**Nos. 92 C 3506, 90 B 15485.
Adv. No. 90 A 955.**

United States District Court,
N.D. Illinois, E.D.

April 25, 1994.

Ronald Roger Peterson, Franches F. Gecker, Larry M. Wolfson, Jenner & Block, Jeffry Mark Henderson, Henry Karl Becker, Henderson & Becker, Chicago, IL, for plaintiff-appellee.

Robert P. Nolan, Nolan & Herrmann, De-Kalb, IL, Arthur S. Wulf, Chicago, IL, for defendant-appellant.

**MEMORANDUM OPINION AND ORDER**

ALESIA, District Judge.

Petitioner Mohammad Akrabawi appeals the bankruptcy court's judgment entered February 29, 1992, in favor of Ronald R. Peterson, as trustee of Stotler and Company ("Stotler") in an adversary proceeding, awarding damages and attorney's fees and costs, and dismissing Akrabawi's Counterclaim.[1] The bankruptcy court awarded judgment in favor of Stotler based on a brokerage contract between him and Akrabawi. In Akrabawi's Counterclaim, he alleged damages for negligent or wrongful acts by Stotler.

## I. PROCEDURAL HISTORY AND BACKGROUND

The instant appeal traces its source to when Stotler sued Akrabawi in the Court of the Sixteenth Judicial Circuit, DeKalb County, Illinois, to recover contractual damages between the parties. Akrabawi counterclaimed to avoid liability and recover his own damages by alleging Stotler's negligence and improprieties. Stotler filed for bankruptcy protection under Chapter 7 in early 1990 in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. Then by Stotler's petition, its case against Akrabawi was moved to the bankruptcy court as an adversary proceeding.

At trial, the bankruptcy court made the following factual findings and conclusions relevant to Akrabawi's appeal:

Akrabawi opened a commodity futures trading account in October 1983 at Heinhold Commodities, Inc. ("Heinhold"), and then traded in this account for approximately seven months, losing approximately $14,000. On October 14, 1983, Akrabawi signed a customer agreement with Heinhold. He then assigned both his account and customer agreement to Stotler on or near March 14, 1987. In his answer to the allegations of

---

1. While the bankruptcy court termed its disposition of the Counterclaim a dismissal, it might have been more accurate to refer to that disposition as a judgment, since the court reached the merits. The parties have not raised this as a substantial deficiency in the bankruptcy court's disposition, so it would serve no purpose for this court to drum up a controversy over choice of terms. As did the parties, the court views the bankruptcy court's disposition of both the Complaint and Counterclaim as a final judgment.

paragraphs 2 and 3 of Stotler's Complaint, Akrabawi admits this assignment occurred.

Akrabawi, pursuant to his assignment, traded commodity futures contracts at Stotler throughout 1989. He traded in S & P 500 futures on June 30, September 13 and 15, and October 4 and 11–13, 1989. He was trading in the S & P market to offset his losses from trading in the soybean market.

On October 13, 1989, at about 2:00 p.m., Akrabawi decided to liquidate his S & P positions and placed a sell order at $350.90 with Stanley Storm, an agent of Stotler. The written order for Akrabawi's sell was time stamped 2:01 p.m. According to the Chicago Mercantile Exchange Time and Sales Report, the last trade of S & P 500 futures at $350.90 or better occurred at 2:01:43 p.m.

To determine whether his sell order was executed, Akrabawi instructed Storm to enter a cancel-and-confirm order several minutes after Akrabawi's original sell order. This cancel-and-confirm order was entered, time stamped 2:03 p.m., and phoned to the Stotler order desk on the exchange floor.

Upon receiving this cancel-and-confirm order, the individual at the Stotler order desk told Storm that it would take approximately half an hour to determine the status of the original sell order. Storm relayed this information to Akrabawi.

Trading in S & P futures ceased from 2:06:55 p.m. through 2:30:17 p.m. Before this, at approximately 1:55 p.m., the exchange had designated the S & P market as "fast." This designation would last through the rest of the day.

At 2:42 p.m., the Stotler order desk called Storm and told him that Akrabawi's original sell order had not been filled. Storm immediately relayed this information to Akrabawi. Akrabawi entered no more orders. Trading in December S & P 500 futures ended approximately ten minutes later at 2:52 p.m. on October 13.

Later that day, Friday, Storm requested that Akrabawi give Stotler a check for $120,000, additional margin, before the market opened on Monday, October 16, in order to hold his positions. Akrabawi did not tender this amount, and on October 16, Stotler liquidated Akrabawi's position at a loss to Akrabawi of $70,573.16. Stotler then sued to recover this debit balance of $70,573.16 plus interest of $2,416.89 and attorney's fees and costs. Akrabawi counterclaimed to avoid liability of the debit balance and to collect damages because of alleged negligence and improprieties by Stotler in handling his account.

The bankruptcy court granted judgment in favor of Stotler and against Akrabawi. Akrabawi appealed the bankruptcy court's judgment.

## II. DISCUSSION

### A. Appellant's Briefing

On appeal, Akrabawi's brief must meet the requirements of Bankruptcy Rule 8010. Pursuant to Rule 8010(a)(1)(D), Akrabawi must make "a statement of facts relevant to the issues presented for review, with appropriate references to the record." Akrabawi's statement consistently excludes adverse trial evidence, testimony and factual findings. For that reason alone, Akrabawi's appeal fails.

As far as the argument section of Akrabawi's brief, Rule 8010(a)(1)(E) requires that "[t]he argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."

Though providing arguments and the reasons therefor, Akrabawi rarely cites to authorities, statutes or parts of the record. Without these citations many of the reasons underlying Akrabawi's arguments are simply conclusory.

Two examples illustrate the point. Akrabawi states in his appellate brief that he "was an unsophisticated trader who was not knowledgeable in the area of commodity trading. That Akrabawi was so was also clear from the testimony at trial." (Appellant's Brief at 8) No citation is provided. Later, Akrabawi states that "Storm's testimony that he immediately informed Akrabawi [that it would take twenty minutes to find the order] is not worthy of belief. It is

belied ... by the testimony of Akrabawi and other defense witnesses...." (*Id.* at 9). Again, Akrabawi neither specifies what this testimony was nor cites to the trial record so this court could locate it.

Such statements burdened this court with searching for and often guessing as to which parts of the record are relevant to Akrabawi's arguments. It is not this court's responsibility to undertake this unnecessary burden. Akrabawi is being represented by lawyers, and no excuse exists for them to exclude cites to the record in the brief's argument.

Appellant failed to brief this appeal according to the bankruptcy rules. For that reason alone, his appeal fails. The court continues to the substance of the appeal for the sake of completeness.

## B. *The Substance of the Appeal*

■ Leaving aside the procedural deficiencies of Akrabawi's brief, this court has reviewed the bankruptcy court's factual findings and legal conclusions. In doing so, Rule 8013 states that "findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness." *See also Calder v. Camp Grove State Bank,* 892 F.2d 629, 631 (7th Cir.1990). This court will only determine that factual findings are clearly erroneous when the entire record definitely and firmly convinces this court that a mistake has been made. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). As long as two permissible interpretations of the evidence exist, the bankruptcy court's judgment is not clearly erroneous in choosing one over the other. *Id.*

■ Whenever a contested finding pivots on determinations of the credibility of conflicting witnesses, Rule 8013 compels this court to give deference to the bankruptcy court's findings. *See id.* However, this court reviews the bankruptcy court's legal conclusions *de novo. Calder,* 892 F.2d at 631.

### 1. *The Assignment*

First, Akrabawi contests the bankruptcy court's finding that he assigned a contract to Stotler. In his Complaint, Stotler alleged that Akrabawi assigned a contract to Stotler. The bankruptcy court found that Akrabawi admitted assigning this contract in his answer to Stotler's complaint.

In his appellate brief, Akrabawi never contests or even mentions the assignment admission. Thus, the bankruptcy court's finding of the admission is accepted. However, Akrabawi argues on appeal that Stotler did not present at trial any evidence proving that an assignment occurred. This argument presumes that even with his admission, Stotler had a burden to provide evidence of the assignment.

■ Akrabawi's admission allowed the bankruptcy court to accept Stotler's allegation of an assignment as true, precluding the need at trial for Stotler to provide evidence. BANKR.R. 7008(a); FED.R.CIV.P. 8(d); *Atkinson v. Atkinson,* 167 F.2d 793 (7th Cir.1948). Akrabawi provides nothing to refute this thesis. Neither does Akrabawi cite any authority supporting his presumption that Stotler still had an evidentiary burden to prove the assignment. Akrabawi has not shown that the bankruptcy court's judgment was clearly erroneous or, indeed, erroneous by any standard in determining that a contractual assignment occurred.

### 2. *Negligent or Wrongful Inducement*

■ Besides contesting the assignment finding, Akrabawi contests the bankruptcy court's finding that Stotler's agents did not act negligently. Akrabawi characterizes the determination of negligence as a factual finding. Determining what acts occurred is a factual finding; whether these acts are negligent or unlawful is a legal conclusion.

In his brief, Akrabawi alleges that Storm, an agent of Stotler, negligently or wrongfully influenced Akrabawi regarding one of his trading account decisions. His negligence claim pivots on two factual contentions. First, Akrabawi asserts that his trial testimony proves that he was an unsophisticated trader, not knowledgeable at trading. But

Akrabawi does not describe this testimony nor cite to its location in the record, thus violating Rule 8010.

Aside from this violation, controverting evidence does exist in the record. This evidence showed that Akrabawi had been forewarned about the risks of trading, had been trading and suffering losses as early as 1983, and was trading during 1989 to recover losses. Given this controverting evidence, Akrabawi has failed to show that the bankruptcy court was clearly erroneous in determining that he was not an unsophisticated trader.

Next, Akrabawi contests the bankruptcy court's exclusion of an interaction between him and Storm, an agent of Stotler. Akrabawi states that he testified at trial to informing Storm of his intention to liquidate some unprofitable account positions. Then, the theory goes, Storm advised Akrabawi not to liquidate those accounts, and Akrabawi decided not to liquidate.

Disregarding Rule 8010, Akrabawi again fails to specify the location of this testimony or the dates of this interaction. He does not even refer to this interaction in his appellate brief's one-sided factual statement. Regardless, the bankruptcy court did not find such testimony credible and excluded it from its findings. Since this court is to favor the bankruptcy court's credibility determinations, this court upholds the bankruptcy court's finding that this interaction did not occur. Since this court has rejected both of Akrabawi's factual claims, it rejects his negligence claim that pivots on them.

■ Akrabawi also alleges that Storm and other Stotler agents negligently handled his sell order, time stamped at 2:01 p.m., on October 13, 1992. At most, 1 minute and 43 seconds were available for filling the order at Akrabawi's requested price, and Stotler did not fill the order. Akrabawi argues that because this order could have been filled in time, Stotler is liable for negligence. However, the issue was not whether the order could have been filled, but whether Stotler was negligent for not filling it. In contrast to Akrabawi's claim of negligence, two agents of Stotler testified that according to industry standards, the failure to complete the order in both "fast" or normal conditions was not

negligent. Moreover, Akrabawi's signed risk disclosure statement also warned him that under certain conditions, his order may not be filled. Given this controverting testimony and evidence, Akrabawi has not shown that the bankruptcy court was clearly erroneous in rejecting his standard.

On appeal, Akrabawi has failed to cite any authority that would prompt this court to conclude that Stotler through its agents was negligent in not completing Akrabawi's order in 1 minute and 43 seconds. Consequently, the court upholds the bankruptcy court's conclusion that Stotler did not negligently handle Akrabawi's order.

Next, Akrabawi contests the bankruptcy court's finding that Storm informed him that it would take twenty minutes to respond to his cancel-and-confirm order and then later informed Akrabawi before the market closed that his order had not been filled. Akrabawi refers to testimony that controverts the court's finding but again does not describe this testimony or cite to the record. However, testimony and evidence existed supporting the court's finding.

Given this evidence, Akrabawi has not shown that the bankruptcy court's finding was clearly erroneous. Akrabawi's claim that Stotler negligently mishandled his cancel-and-confirm order is tied to his factual claims. Since this court has rejected his factual claims, it has rejected his negligence claim.

### 3. *Wrongful Liquidation*

■ Besides alleging negligence, Akrabawi asserts that Storm wrongfully liquidated his account. In doing so, Akrabawi contests the bankruptcy court's finding that Storm demanded margin on October 13, 1992. In his appellate brief, he asserts that at trial his testimony and that of other witnesses controvert the bankruptcy court's finding. Again, he fails to specify this testimony or cite the trial record. Regardless, there was testimony from Storm that supported the bankruptcy court's finding. Electing to follow Storm's testimony involves a credibility determination. This court favors the bankruptcy court's credibility determinations and upholds the bankruptcy

court's finding. Given this, Akrabawi has failed to show that the bankruptcy court was clearly erroneous.

Akrabawi's claim of wrongful liquidation is not only tied to his factual claim that Storm did not demand margin on October 13, 1992, but also that no contractual relationship existed with Stotler. As discussed, this court found that Akrabawi assigned a contractual relationship to Stotler. Since this court has rejected both of Akrabawi's factual claims, it rejects his claim for wrongful liquidation.

### 4. *Award of Attorney's Fees and Costs*

Lastly, Akrabawi contests the bankruptcy court's award of attorney's fees and costs to Stotler pursuant to a contractual agreement between Akrabawi and Stotler. In his appellate brief, Akrabawi admits that attorney's fees and costs may be awarded pursuant to contract but argues that no contractual relationship exists. He also cites cases that bar an award of costs and fees to in-house counsel.

■ As discussed, Akrabawi assigned contractual agreements to Stotler. Furthermore, the fact that the work was undertaken by in-house counsel does not bar a fee award. *See Central States, Southeast & Southwest Areas Pension Fund v. Tank Transport, Inc.*, No. 90 C 5524, 1993 WL 369331, at *10 (N.D.Ill. Sept. 17, 1993) (citing *Textor v. Board of Regents of Northern Ill. Univ.*, 711 F.2d 1387, 1397 (7th Cir.1983)). Consequently, this court upholds the bankruptcy court's award of attorney's fees and costs to Stotler.

### *CONCLUSION*

The judgment of the bankruptcy court is affirmed.