TED PECORA, Plaintiff-Appellant and Cross-Appellee, *v.* FRANK SZABO, JR., *et al.*, Defendants-Appellees and Cross-Appellants.

Second District    No. 78-100

Opinion filed February 25, 1981.—Rehearing denied April 16, 1981.

58

Gerald M. Sheridan, Jr., of Wheaton, and Robert J. Klovstad, of Chicago, for appellant.

Joseph M. Laraia, of Laraia & Kilander, of Wheaton, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Ted Pecora, brought suit against defendants, Frank Szabo, John Schultz and Modern Car Wash Systems, an Illinois corporation (Modern), for certain sums alleged to be the balance due on the sale of Modern by plaintiff to the defendants, for breach of a sales commission agreement, and for the balance of the purchase price of a building constructed by plaintiff for defendants. Defendants counterclaimed for credits due them from plaintiff under the contract of sale for Modern, for the return of money paid plaintiff, for misrepresentation, for misappropriation of corporate assets by plaintiff, and for slander of title. At the conclusion of plaintiff's case, the Circuit Court of Du Page County directed a verdict for defendants and against plaintiff on his claim for part of the sums alleged due on the sale of Modern. Judgment upon a jury verdict was entered, awarding plaintiff the remainder of the sums alleged due on the contract of sale and the balance of the purchase price of the building constructed by plaintiff for defendants, but denying plaintiff's claim for damages for breach of the sales commission agreement. The jury granted defendants' counterclaims for credits due them from plaintiff, and for misappropriation of corporate funds, but denied their demands for the return of money paid to plaintiff, for damages for misrepresentation, and for slander of title.

In view of the several claims and counterclaims, a detailed recitation of the facts is in order. Plaintiff, Pecora, is an entrepreneur who, in 1971, owned various business concerns, including Modern, which manufactured car wash equipment, and Car Wash Engineering Company (Car Wash), which sold and installed such equipment. In December 1971, Pecora and Modern executed a note to the First National Bank of Chicago for $90,000. The disposition of the cash received in exchange for the note figures in the defendants' counterclaim for misappropriation of corporate assets and will be examined below. In July 1972, plaintiff sold to defendant, Szabo, 37½% of Modern's stock for $30,000. The purchase price included consideration for the sale to Szabo of an option to purchase an additional 12½% of Modern's stock for $10,000. A few months later, Pecora

agreed to sell the remaining 50% of Modern's stock to defendant, Schultz, for $60,000.

Pecora, Szabo, and Schultz negotiated a sales agreement which was dated December 11, 1972, and which provided for the sale of stock to Schultz and for Szabo's exercise of his option to purchase the remaining 12½%. Paragraph 4(d) of the agreement stated that the purchase price was predicated upon, *inter alia*, an assumption that accounts receivable equaled accounts payable as of December 11, 1972. If the former exceeded the latter, the purchase price would be increased by that amount; if the latter exceeded the former, then the price would be decreased. The sales agreement further provided that the plaintiff would construct a building on Westwood Avenue in Addison, Illinois. Plaintiff was to sell the building to defendants at an agreed price of $170,000 or if the defendants were without funds, rent it to them.

The transaction was completed on January 8, 1973. The shares of stock were transferred by Pecora; Szabo paid $10,000 exercising his option, and Schultz paid $50,000, executing a $10,000 note for the remainder of the $60,000 purchase price. The parties also entered into an agreement whereby Car Wash, the sales and installation business owned by plaintiff, would be Modern's sales agent in Illinois and receive commissions for sales made. The commission agreement provided for liquidated damages of $14,000 per year in the event of breach by Modern.

On this same date defendants executed a note for $58,411. The terms upon which this note was transferred are disputed by the parties, but they agree that the transfer occurred after some discussion as to the disposition of net profits from work in progress, *i.e.*, sales of machines which were still being manufactured.

Plaintiff alleged that the $58,411 note represented defendants' agreement that plaintiff should share in both the actual and projected earnings of the corporation as of December 11, 1972. Defendants claim that though they signed the note it was with the understanding that the plaintiff would "tear it up" if the projected profits from work in progress did not materialize. It is undisputed that on February 22, 1973, defendants paid $30,000 on the note and executed a second note for the $28,411 balance. They claim that this payment was an "advance" on the contingent agreement to share in projected profits.

The building which plaintiff had agreed to construct for defendants was completed in April 1973, and on May 10, 1973, defendants exercised their option to purchase the structure. They procured a mortgage for $140,000 and executed a note to plaintiff in the amount of $30,794.02 for the remainder of the purchase price.

The relationship between plaintiff and defendants deteriorated. In July 1973, plaintiff began pressing for payment of the three notes given

him by defendants (the first was the $10,000 note from Schultz for stock in Modern, the second was the $28,411 note representing the disputed obligation regarding profits from work in progress on December 11, 1972, the third for the price of the Westwood Avenue building in the amount of $30,794.02). At this time, plaintiff discovered he had lost all three notes.

Defendants, in turn, demanded repayment of the $30,000 "advance" given in February and claimed that accounts payable had been found to exceed accounts receivable by $24,534.81 and therefore they were entitled to a reduction in the purchase price of the stock pursuant to paragraph 4(d). Such a reduction, they told plaintiff, would cancel Schultz's note for $10,000 and create a debt in their favor for the balance.

Pecora instituted suit about one month later demanding payment of the notes for $28,411 and for $30,794.02 and, by his amended complaint, for payment of the $10,000 note given by defendant, Schultz and for liquidated damages under the sales commission contract between Modern and Car Wash. Defendants made various counterclaims, including demands for the $24,534.81 by which they alleged accounts payable exceeded accounts receivable at the date of the sale of Modern, for the return of the $30,000 "advance" they paid plaintiff, and for damages for fraudulent misrepresentations by plaintiff during the negotiations. Defendants also alleged misappropriation of corporate assets by plaintiff with regard to the December 1971 loan to Modern and Pecora by the First National Bank of Chicago and demanded $30,000 damages. Finally, defendant counterclaimed for damages for slander of title. The action arose out of plaintiff's filing of a notice of *lis pendens* with the recorder of deeds which claimed an equitable interest in the Westwood Avenue building and his alleged interference with defendants' attempts to sell the property. In the interval between the commencement of these claims and the trial, Modern went bankrupt, defendant defaulted on the mortgage, and Pecora bought the Westwood property at the foreclosure sale.

At the trial of the cause, the court ruled that evidence of the purported agreement by the parties to pay plaintiff $58,411, representing his share of the projected profits for work in progress at the date of the sale of Modern, including evidence of the execution of notes for $58,411 and for $28,411 and of the cash payment of $30,000, was barred by the parol evidence rule. At the close of plaintiff's case, the trial court directed a verdict for defendants on the claim for $28,411. The jury returned verdicts in favor of plaintiff on his actions on the $10,000 note given him by defendant, Schultz, and on the $30,794.02 note for the balance of the purchase price of the Westwood building, but denied plaintiff's claim for liquidated damages for breach of the sales commission agreement.

Defendants' counterclaims for the credit of $24,534.81 alleged due them under paragraph 4(d) of the sales contract and for misappropriation

of corporate assets by plaintiff were granted by the jury. But the actions for the return of the $30,000 paid to plaintiff as an alleged "advance," for damages for fraudulent misrepresentation, and for slander of title were denied. Judgment was entered on the verdicts and all parties appeal.

## I.

Plaintiff alleges that the trial court erred in excluding evidence of an agreement between the parties that defendants would pay plaintiff $58,411, which represented plaintiff's share of projected profits to be received from work in progress. Plaintiff's amended complaint alleged this agreement and the execution by defendants of a note for that amount. The note was executed, contemporaneously with the written sales contract, on January 8, 1973. Plaintiff further alleged that the defendants made a cash payment of $30,000 on the note February 22, 1973, and executed another note for the $28,411 balance. The note has since been lost. Judgment in the amount of $28,411 was demanded.

The trial court excluded all evidence relating to this agreement, including evidence of the execution of the notes, of the cash payment of $30,000 and of a memorandum prepared by defendant, Szabo, in November 1972 which computed projected profits for work in progress. The court determined that the parol evidence rule prohibited the admission of testimony relating to the alleged agreement because such agreement was not expressly referred to in the contract of sale. At the conclusion of plaintiff's case, the defendants' motion for a directed verdict on this count was granted.

Plaintiff argues that it was error for the trial court to grant a directed verdict because, even without the excluded testimony, the pleadings established a *prima facie* case for an action on a lost note. Defendants, in their answer, admitted execution and nonpayment of the $28,411 note but denied that the note represented an unconditional obligation. On appeal, defendants argue that the complaint was cast in the language of a contract action for which no *prima facie* case was made out. This argument, however, is not borne out by examination of the complaint. A fair reading of the complaint reveals a cause of action for nonpayment of a note.

■■ ■ Section 3—307 of the Illinois Commercial Code provides that where signatures on an instrument are admitted or established, production of the instrument entitles the holder to recover unless defendant establishes a defense. (Ill. Rev. Stat. 1977, ch. 26, par. 3—307(2).) The Illinois Code Comment elaborates: "This subsection is also in accord with §16 of the NIL [Negotiable Instruments Law], which placed the burden of proving non-delivery or *conditional delivery* on the person asserting the defense * * *." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 26, par. 3—307, Illinois Code Comments, at 203 (Smith-Hurd 1963).) A cause of

action may be pleaded on a lost note where the owner proves his ownership, the facts which prevent production of the instrument, and its terms (Ill. Rev. Stat. 1977, ch. 26, par. 3—804), and the fact of loss does not affect the burden of proof of a defense (see *Steven v. Falese Land Co.* (1977), 50 Ill. App. 3d 231, 365 N.E.2d 967). Because plaintiff's ownership of the note and its terms are admitted and because plaintiff alleged loss of the note, a *prima facie* case for an action on a lost note was made out and we find that it was error for the trial court to have directed a verdict on this count.

■■ ■ But this disposition of the matter does not resolve the issue of whether it was error to exclude the proffered evidence of the agreement to pay projected profits. The parol evidence rule, as stated by Williston "requires, in absence of fraud, duress, mutual mistake, or something of the kind, the exclusion of extrinsic evidence, oral or written, where the parties have reduced their argument to an integrated writing." (J. Calamari & J. Perillo, The Law of Contracts §3—2 (2d ed. 1977).) The threshold question for the application of the rule is whether the writing was integrated, *i.e.*, whether it was intended by the parties to be a final and complete expression of the entire agreement. (18 Ill. L. & Prac. *Evidence* §255 (1956).) The question of integration is decided by the trial court as a matter of law and if the contract imports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item, and parol evidence cannot be admitted to add another term to the agreement. *Storybook Homes, Inc. v. Carlson* (1974), 19 Ill. App. 3d 579, 312 N.E.2d 27.

But, where different instruments are executed together as part of one transaction or agreement, they are to be read together and construed as constituting but a single instrument. (12 Ill. L. & Prac. *Contracts* §228 (1955).) Stated otherwise, "the court will look to the contract and to their documents executed contemporaneously in determining the party's intent." (*Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 26, 379 N.E.2d 1298, 1300.) *H.B.G. Corp. v. Houbolt* (1977), 51 Ill. App. 3d 955, 367 N.E.2d 432, held that, where a contract for the sale of a business expressly referred to the employment of the seller by the buyer, the employment contract was not the controlling document in an action for breach of one of its provisions but the two contracts must be construed together. The court said: "It is not unusual nor erroneous to consider several separate writings to determine the nature of the agreement which is in issue." 51 Ill. App. 3d 955, 959, 367 N.E.2d 432, 435. Accord, *In re Estate of Kritsch* (1978), 65 Ill. App. 3d 404, 382 N.E.2d 50 (joint and mutual wills).

The doctrine of collateral contract is not limited in application to documents which refer to each other. (See R. Hunter, Trial Handbook for Illinois Lawyers §78:9 (4th ed. 1972).) A recent decision is closely on point

and warrants scrutiny. In *Sudeikis v. Chicago Transit Authority* (1980), 81 Ill. App. 3d 838, 401 N.E.2d 1114, the plaintiff-employee and defendant, Chicago Transit Authority, entered into a settlement agreement and at the same time the parties' attorneys initialed and noted "o.k." on a letter, which plaintiff alleged was agreed to be sent out in response to inquiries by plaintiff's prospective employers. The settlement contract made no reference to any such agreement. In an action for breach of the agreement to send the letter, the trial court held that the settlement contract was complete and unambiguous on its face and therefore plaintiff was precluded from introducing parol evidence to establish another agreement and dismissed her action.

The appellate court reversed the dismissal, stating:

> "The rule of law applicable here is that where different instruments are executed at the same time between the same parties, for the same purpose, and in the course of the same transaction, all of the instruments must be read and construed together. [Citations.] To prove that the two documents are part of the same transaction or constitute but one contract, parol and extrinsic evidence are [*sic*] admissible because such evidence tends to merely identify what the contract is rather than to vary or change the terms of a contract. [Citations.]
>
> In the instant case the complaint and documents made a part thereof contain allegations that both the Agreement and the letter were executed on August 19, that each was signed by the same persons, that they related to the same subject matter, and that they were part of the same transaction. Parol evidence to prove these allegations is, therefore, admissible on the issue of what the contracts is. If it is thereby established that the two documents are but one contract then they must be read and construed together." 81 Ill. App. 3d 838, 841, 401 N.E.2d 1114, 1117.

On the authority of *Sudeikis*, we hold that the parol evidence offered by plaintiff was admissible to prove the agreement to pay projected profits. It was alleged and admitted that the documents were executed together as part of the same transaction. Parol evidence was thus necessary to prove "what the contract is." (*Sudeikis.*) We reverse the trial court's ruling on this count and remand the case for further proceedings.

## II.

Defendants have appealed the judgment of the jury verdict denying them a return of the $30,000 paid by them to plaintiff. This issue, raised by defendants in their counterclaim and cross-appeal, has the same transactional basis as plaintiff's claim for $28,411. Plaintiff was denied the opportunity to present parol evidence to support his claim on a lost note

for $28,411 but defendants were allowed to present such evidence in order to show that the $30,000 cash they paid plaintiff was to reduce an obligation which was contingent on profits that were never realized. Nonetheless the jury appeared not to believe that the obligation was contingent and as such denied their claim for a refund. Examination of the record reveals that the verdict was not against the manifest weight of the evidence.

## III.

Plaintiff makes two points in his argument that judgment on the jury's verdict granting the defendants' counterclaim for a reduction in the purchase price should be reversed. The first point is that, if plaintiff has been allowed to prove the parol agreement to pay plaintiff $58,411 in projected profits, the amount of the verdict for the defendants would have been reduced. Defendants' counterclaim was based upon paragraph 4(d) of the sales agreement (discussed above), which stated that the purchase price was predicated on the assumption that accounts receivable equaled accounts payable as of the date of the agreement, December 11, 1972, and that the price would be adjusted in the amount of any discrepancy.

Plaintiff argues that his defense of this counterclaim was prejudiced because he was not allowed to introduce a memorandum made by one of the defendants which calculated projected profits for work in progress. He contends that, because a determination of projected "profits" necessarily includes a comparison of expected accounts payable versus expected accounts receivable, the evidence offered affected accounts receivable and accounts payable as of December 11, 1972. In his brief, plaintiff states: "For instance, the costs of finished products used in the computation (Px4) [the evidence plaintiff unsuccessfully sought to introduce] included 'materials to be spent' which meant materials that had to be paid for in addition to the known accounts payable." But, this argument speaks for itself. If the parol evidence would have shown accounts payable expected to accrue after December 11, 1972, then it would not have affected the computation of that account before that date and thus could not come within the contemplation of paragraph 4(d).

Plaintiff's second point is that the verdict is against the manifest weight of the evidence. The jury heard the evidence at the trial and its verdict should stand.

## IV.

Defendants appeal the judgment entered on the jury verdict against them in the counterclaim for slander of title. They alleged that plaintiff slandered the title of their property, by filing a notice of *lis pendens*

against the Westwood Avenue building, which plaintiff had sold to defendants in return for $140,000 cash and a note for $30,794, by filing a *pro se* action for a rescission of the sale of the property, and by attempting to buy the property through a nominee.

■■ It should be noted here that, although defendants-cross-appellants accuse plaintiff of the failure to include in the report of proceedings the testimony of certain witnesses which they deem to be important to the counterclaim, the burden to produce the record is on the cross-appellants, and the missing testimony will be construed against them. *H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285, 379 N.E.2d 765.

Defendants argue that they introduced more than enough evidence to require a verdict in their favor. We are directed to *Home Investments Fund v. Robertson* (1973), 10 Ill. App. 3d 840, 295 N.E.2d 85, which described the elements of a cause of action for slander of title as (1) oral or written words disparaging a person's title to property which result in (2) special damages and which are motivated by (3) malice. *Home Investments* articulated a broad interpretation of the malice element:

> "Although no Illinois case discusses the issue, it is clear from other jurisdictions that actual malice need not be shown; implied malice is sufficient. [Citations.] It has been said that malice merely means a lack of legal justification and is to be presumed if the disparagement is false, if it caused damage, and if it is not privileged. [Citations.]" 10 Ill. App. 3d 840, 842, 295 N.E.2d 85, 87.

However, more recent cases appear to have rejected this liberal reading of the term. In *Whildin v. Kovacs* (1980), 82 Ill. App. 3d 1015, 1017, 403 N.E.2d 694, 696, the court held that a complaint which alleged a filing of *lis pendens* against property without legal justification was insufficient to plead malice. *Whildin* relied on the Restatement Second of Torts which rejected a "strict liability" theory of malice. Section 623A provides:

> "One who publishes a false statement harmful to the interest of another is subject to liability for pecuniary loss resulting to the other if
>
> (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and
>
> (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity." Restatement (Second) of Torts §623A (1977).

■■ ■ Thus, the weight of authority holds that a showing of malice requires knowledge by defendant that the disparaging statements were false or reckless disregard of this falsity. Under this view, the evidence of

malice in the case at bar is not such that reasonable minds could not differ as it must be if we were to overturn the jury's determination of the facts. (*Denniston v. Skelly Oil Co.* (1977), 47 Ill. App. 3d 1054, 362 N.E.2d 756.) We affirm the judgment on the verdict.

## V.

Defendants (Modern and Szabo, but not Schultz), counterclaimed against plaintiff for misappropriation of corporate assets and judgment was entered on a jury verdict in their favor. The evidence showed that on December 14, 1971 (before Szabo was a stockholder in Modern), plaintiff refinanced the existing mortgage on the building in which Modern conducted its business located on Belden Avenue in Addison, Illinois. At the suggestion of the loan officer of the First National Bank of Chicago (First Chicago), Pecora co-signed a note with Modern in the amount of $90,000. First Chicago required Pecora to place $30,000 in a pledge account with its bank, with the understanding that when the balance of the loan due ($1500 monthly payments were made by Modern) was paid down to an amount which equaled 70% of the value of the Belden Avenue building, the pledge account fund would be released. Of the remaining $60,000, some went into Modern's checking account and the rest was used to pay off debts of the corporation.

In November 1972, the building on Belden Avenue was sold and the loan from First Chicago was paid. At that time, the $30,000 pledge account was released to Pecora, who, it is admitted, used the money to his own personal benefit. Simply stated, the defendants' position is that the corporation received only $60,000 yet it repaid the entire $90,000 of loan principal. Therefore, $30,000 of corporate funds was misappropriated.

Plaintiff's first argument is that defendant, Szabo, lacked standing to bring the suit in his own name. This argument was not made to the trial court nor included in his post-trial motion, however, and defendants claim it should be deemed waived on appeal. The failure to include an alleged error in a post-trial motion constitutes a waiver of that issue and the point cannot be urged as a ground for reversal on review. (Ill. Rev. Stat. 1979, ch. 110, par. 68.1; *Domena v. Prince* (1977), 52 Ill. App. 3d 462, 367 N.E.2d 717.) Plaintiff asks this court to hold that the trial court lacked subject-matter jurisdiction to enter judgment in favor of defendant, Szabo. But we find that jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and if the complaint or petition states a case belonging to the general class over which the authority of the court extends its jurisdiction attaches and no error committed by the trial court can render the judgment void. (See *Lemons v. Lemons* (1978), 57 Ill. App. 3d 473, 373 N.E.2d 544, citing 14 Ill. L. & Prac. *Courts* §16 (1968).) Where wrongful acts are violations of a duty

arising from a contract or otherwise and are owed directly by the wrong-doer to a stockholder, the stockholder may sue in his own name for the individual injury. (*Zokoych v. Spaulding* (1976), 36 Ill. App. 3d 654, 344 N.E.2d 805.) Thus the trial court has jurisdiction over this general class of cases. Therefore there is no lack of subject-matter jurisdiction and we find that a waiver of whatever trial error was committed has occurred.

■■ Plaintiff's next contention is that the verdict is against the manifest weight of the evidence because a sole shareholder may dispose of corporate assets in any manner he sees fit so long as not in violation of the Business Corporation Act (Ill. Rev. Stat. 1977, ch. 32, par. 157.1 *et seq.*) or in fraud of the corporation's creditors. This argument ignores defendants' point that the misappropriation occurred not in December 1971, at which time plaintiff was a sole shareholder, but in November 1972, when Szabo was a minority shareholder, because it was at that time that the corporation repaid the full amount of the $90,000 loan of which it had received only $60,000. As an officer (plaintiff was president of Modern), Pecora owed a fiduciary duty to the corporation and was not permitted to appropriate corporate property or use corporate property for his own individual purposes (*Zokoych*), and we believe the jury's finding that the plaintiff misappropriated $30,000 of corporate funds to his own use is supported by the evidence. (See *Zokoych*.) We also reject plaintiff's argument that evidence of the loan from First Chicago and the accounting method used to report the income was irrelevant; the testimony was clearly relevant to the defendants' counterclaim.

## VI.

We affirm the various other verdicts appealed by both sides. The verdicts denying plaintiff's claim for liquidated damages, granting him $10,000 and $30,794 for his actions on two notes given him by defendants, and denying defendants damages for misrepresentation were not against the manifest weight of the evidence.

The judgment of the Circuit Court of Du Page County is therefore reversed and remanded in part and affirmed in part.

Reversed and remanded in part, affirmed in part.

NASH and VAN DEUSEN, JJ., concur.