**Coravonne T. SALM, Plaintiff,**

v.

**Mary Jane BRONCATO, Susan C. Morrison, Bobby Jenkins, and Rene Leininger, Defendants.**

No. 99–3039.

United States District Court, C.D. Illinois, Springfield Division.

June 15, 2001.

Patricia L. Hayes, Hayes Law Office Springfield, IL, Attorney for Plaintiff.

Steven Matrisch, Office of Attorney General, Springfield, IL, Attorneys for Defendants.

## OPINION

RICHARD MILLS, District Judge.

The argument seemed sound enough, but when a theory collides with a fact, the result is a tragedy.

Louis Nizer

"My Life in Court"

Doubleday, 1961

Plaintiff's theories regarding the deprivation of her civil rights may seem sound, but her theories have collided with the fact that (1) she has not established a nexus between her speech and the non-renewal of her employment contract and the fact that (2) she has not established that she was an employee of the State of Illinois.

Summary judgment granted for Defendants.

## I. BACKGROUND

On August 27, 1996, Fayrene Leininger, on behalf of the Illinois Planning Council for Developmental Disabilities ("IPCDD"), offered Coravonne T. Salm the position of project coordinator of the Illinois Transition Consortium.

The Illinois Transition Consortium was a federally funded five-year grant from the United States Department of Education; it involved numerous state agencies working on behalf of individuals with developmental disabilities and their families. The three major state agencies working on the Illinois Transition Consortium were the IPCDD, the Illinois State Board of Education ("ISBE"), and the Illinois Department of Rehabilitative Services ("DORS").[1] Leininger represented the IPCDD on the Illinois Transition Consortium, Bobby Jenkins[2] represented the DORS, and Susan Morrison represented the ISBE. All three were co-directors of the Illinois Transition Consortium, and Mary Jane Broncato functioned as the project administrator for the Illinois Transition Consortium as part of her duties as the Assistant State Board of Education Superintendent.

---

1. The Illinois Department of Rehabilitative Services is now known as the Illinois Department of Human Services.

2. Bobby Jenkins replaced Carl Suter as a co-director of the Illinois Transition Consortium in July or August 1997.

Salm accepted the position with the Illinois Transition Consortium, signed an employment contract,[3] and began working as the project coordinator on September 3, 1996.

In June 1997, Leininger resigned, on behalf of the IPCDD, as the fiscal agent for the Illinois Transition Consortium. The Illinois Transition Consortium's fiscal agent was the entity responsible for distributing the grant's funds, i.e., the fiscal agent wrote the checks for the grant.[4] In June 1997, however, Leininger agreed, on behalf of the IPCDD, to act as the fiscal agent for the Illinois Transition Consortium until the end of September 1997.[5] Thereafter, in July 1997, the Illinois Transition Consortium's staff-including Salm-received an extension on their employment contracts through September 30, 1997.

In mid-October 1997, the Coalition for Citizens with Disabilities ("CCDI") agreed to be the Illinois Transition Consortium's fiscal agent. However, during the transition between fiscal agents, a lapse in the Illinois Transition Consortium's contracts-including its employment contracts-occurred. During this period of time when the Illinois Transition Consortium was without a fiscal agent, the Illinois Transition Consortium effectively ceased to operate due to a lack of funds. Nevertheless, Salm and other employees reported to work during the month of October 1997.[6]

On October 15, 1997, Salm contacted State Representative Thomas Ryder to express her frustrations with the administration of the federal grant and to ask for his assistance in getting the contracts in place necessary for the Illinois Transition Consortium to begin functioning again.[7] On October 16, 1997, Morrison telephoned Salm to advise her that the funding was again in place for the Illinois Transition Consortium. During this conversation, Salm informed Morrison that she had contacted Representative Ryder regarding the administration of the grant.[8]

On October 29, 1997, Morrison contacted Salm and instructed her to attend a meeting with the co-directors of the Illinois Transition Consortium the next day. At the October 30, 1997 meeting, the co-directors (i.e., Leininger, Jenkins, and Morrison) provided Salm with written notice that her employment contract would not be renewed and that this action had been taken in the best interest of the grant. Although Salm asked for further explanation as to why her employment contract would not be renewed, the co-directors provided none. In addition, the co-directors denied Salm's request for an exit interview.

On March 2, 1999, Salm filed the instant case, pursuant to 42 U.S.C. § 1983 and the Illinois Personnel Code, alleging violations of her civil rights.

3. Salm's employment contract began September 3, 1996, and ended August 31, 1997.

4. The federal money flowed through the Illinois Comptroller's office and the ISBE before reaching the Illinois Transition Consortium.

5. The Illinois Transition Consortium could not operate without a fiscal agent because it was not a State agency; therefore, it could not disburse State funds.

6. In the written memorandum notifying Salm that her employment contract would not be renewed, the co-directors advised Salm that she would be compensated for the hours which she worked during the month of October 1997.

7. Defendants assert that Salm contacted Representative Ryder not because she was frustrated with the administration of the grant but because she was no longer receiving a paycheck.

8. Morrison denies that this telephone conversation ever occurred.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir.1997).

## III. ARGUMENTS

After obtaining leave of the Court to do so, Salm filed an Amended Complaint on February 11, 2000. Salm's Amended Complaint contains three Counts against Broncato, Morrison, Leininger, and Jenkins. Count I alleges that Broncato, Morrison, Leininger, and Jenkins violated her First Amendment right to free speech;[9] Count II alleges that they violated her Fourteenth Amendment right to due process;[10] and Count III alleges that they violated her rights contained within the Illinois Personnel Code.

---

**9.** In her memorandum of law in support of her response to Defendants' motion for summary judgment, Salm includes the IPCDD as a named defendant. However, the Court dismissed, with prejudice, the IPCDD as a Defendant in this cause from Salm's Original Complaint because her suit against the IPCDD was barred by the Eleventh Amendment to the United States Constitution. In fact, in responding to Defendants' motion to dismiss, Salm admitted that her causes of action against the IPCDD were barred by the Eleventh Amendment and did not re-name the IPCDD as a party defendant in her Amended Complaint. Unfortunately, the Court has come to expect this slip-shod approach to the practice of law by Salm's counsel. In addition to the error noted *supra,* Salm's response and memorandum of law in support thereof contain 68 grammatical, typographical, and spelling errors, including misspelling Salm's first name. But Salm's attorney's neglect is not limited to this one filing; on the contrary,

Salm's counsel waited 73 days before responding to Defendants' Rule 36 request to admit. Such inattention to detail provides a disservice not only to counsel's client but also to the Court.

**10.** In her memorandum of law in support of her response to Defendants' motion for summary judgment, Salm has alleged that her equal protection rights pursuant to the Fourteenth Amendment to the United States Constitution have been abridged. However, Salm did not allege an equal protection claim in her Amended Complaint, nor has she provided any evidence to the Court to substantiate such a claim. Furthermore, in her response, Salm asserts that Count II of her Amended Complaint contains a cause of action for a deprivation of her liberty interest protected by the Fourteenth Amendment. However, the Court dismissed Salm's deprivation of liberty interest claim in ruling upon Defendants' motion to dismiss Salm's Amended Complaint.

Broncato, Morrison, Leininger, and Jenkins have now moved for summary judgment on all three Counts of Salm's Amended Complaint. As for her First Amendment retaliation claim, Broncato, Morrison, Leininger, and Jenkins offer three reasons as to why they are entitled to summary judgment. *First,* Broncato, Morrison, Leininger, and Jenkins argue that Salm's speech to Representative Ryder did not address a matter of public concern; rather, they assert that Salm's communication to Representative Ryder was purely personal—she was concerned about not receiving a paycheck. *Second,* Broncato, Morrison, Leininger, and Jenkins assert that, even assuming, *arguendo,* that Salm's speech touched on a matter of public concern, they are still entitled to summary judgment on Count I of her Amended Complaint because they would not have renewed her employment contract regardless of whether or not she spoke to Representative Ryder. Broncato, Morrison, Leininger, and Jenkins claim that the undisputed evidence reveals that Salm's performance as the Illinois Transition Consortium's project coordinator was sub-par and that the decision not to renew her employment contract was made before she spoke with Representative Ryder. *Third,* Broncato, Morrison, Leininger, and Jenkins contend that they are entitled to summary judgment on Salm's First Amendment claim because she has failed to establish a causal link or a nexus between her speaking with Representative Ryder and their decision not to renew her employment contract.

As for Counts II and III of Salm's Amended Complaint, Broncato, Morrison, Leininger, and Jenkins argue that they are entitled to summary judgment because Salm was not an employee of the State of Illinois. Because Salm was not a State employee, she did not have a property interest, *i.e.,* a legitimate expectation of continued employment based upon a legitimate claim of entitlement. Therefore, her due process claim fails.

Likewise, because Salm was not an employee of the State of Illinois, Broncato, Morrison, Leininger, and Jenkins assert that the Illinois Personnel Code does not apply to her. Thus, even assuming Salm's allegations to be true, there has been no violation of the Illinois Personnel Code as to Salm. Accordingly, Broncato, Morrison, Leininger, and Jenkins ask the Court to enter summary judgment in their favor on all three Counts of Salm's Amended Complaint.

Salm argues that genuine issues of material fact exist which preclude the Court from entering summary judgment against her. Specifically, Salm disputes Broncato's, Morrison's, Leininger's, and Jenkins' assertion that her conversation with Representative Ryder was purely personal; on the contrary, Salm claims that her speech with Representative Ryder touched on a matter of public concern because she asked for his assistance in getting the federally funded grant back on track. Likewise, Salm contends that a genuine issue of material fact exists regarding her work performance as the Illinois Transition Consortium's project coordinator in that she was never given any negative performance evaluations prior to her termination. Thus, Salm asserts that her alleged poor work performance is merely pretext. Finally, Salm argues that the sequence of events preceding her termination establishes the nexus between her speech and the alleged retaliation necessary for maintaining her First Amendment claim.

As for her due process and state law claims, Salm contends that, whether she was a contractual employee or a State employee, is a question of fact for the jury.

Salm claims that, when Leininger hired her, Leininger assured her that the position was for five years and that, otherwise, she would not have accepted the position. Moreover, Salm points to her employment contract which indicates that it is a multiple year contract. Accordingly, Salm argues that genuine issues of material fact exist precluding the Court from allowing Broncato's, Morrison's, Leininger's, and Jenkins' motion for summary judgment on all three Counts of her Amended Complaint.

## IV. ANALYSIS

### A. *FIRST AMENDMENT*

Initially, the Court notes that it need not decide whether Salm was a contractual or a State employee for purposes of resolving the summary judgment motion as to her First Amendment retaliation claim. The United States Supreme Court has held that the First Amendment protects independent contractors from being terminated or from being denied the automatic renewal of an at-will government contract in retaliation for exercising their right to free speech. *Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 678–79, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). In *Umbehr*, the Supreme Court opined that

> neither the Board nor Umbehr have persuaded us that there is a "difference of constitutional magnitude," *Lefkowitz*, 414 U.S. at 83, 94 S.Ct. at 324, between independent contractors and employees in this context. Independent government contractors are similar in most relevant respects to government employees, although both the speaker's and the government's interests are typically— though not always—somewhat less strong in the independent contractor case. We therefore conclude that the

same form of balancing analysis should apply to each.

*Id.* at 684–85, 116 S.Ct. 2342. Thus, the Court will discuss Salm's employment status *infra* in ruling upon Defendants' motion for summary judgment as to Salm's due process and state law claims.

The United States Court of Appeals for the Seventh Circuit has explained:

> In prosecuting a claim of retaliation under the First Amendment's Free Speech clause, the district court must resolve four issues. The first is that the speech must be on a matter of public concern. *See, e.g., Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). If the speech addresses a matter of public concern, the employee must show that the protected speech caused, or at least played a substantial part in, the employer's decision to terminate, or take any other adverse employment action against, the plaintiff. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The district court must then consider the *Pickering* balancing test. This test involves weighing the employee's First Amendment interest against the government's interest, as an employer, in efficiently providing government services through its employees. *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. Finally, the defendant can still prevail if he can show that he would have terminated the employee even in the absence of the protected speech. *Mt. Healthy*, 429 U.S. at 286, 97 S.Ct. 568. The plaintiff must carry the burden of proof for the first two elements; the government has the burden for the last two. *See id.* at 287, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471; *Glass v. Dachel*, 2 F.3d 733, 744 (7th Cir.1993)(government must prove balancing test).

*Klunk v. County of St. Joseph,* 170 F.3d 772, 775 (7th Cir.1999); *Kuchenreuther v. City of Milwaukee,* 221 F.3d 967, 973 (7th Cir.2000). Thus, as to the two "issue[s] on which [Salm] bears the burden of proof, [she] is obliged to identify evidence that would permit a jury to find in h[er] favor." *Roberts v. Broski,* 186 F.3d 990, 995 (7th Cir.1999). "The plaintiff's burden of establishing that the substantial or motivating factor was retaliation is a burden of persuasion, which he must prove by a preponderance of the evidence." *O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1368 (7th Cir.1993).

■ In the instant case, the Court finds that Salm has failed to meet her burden of establishing that speaking with Representative Ryder caused or played a substantial part in Broncato's, Morrison's, Leininger's and Jenkins' decision not to renew her employment contract. As for Defendant Broncato, Salm has failed to establish that she even knew that she had spoken to Representative Ryder. Although Salm has presented evidence that Broncato was involved in the decision not to renew her employment contract, Salm has failed to present any evidence showing that Broncato was aware that she had spoken with Representative Ryder.

Likewise, Salm has failed to establish that her speech was a motivating factor with regard to Jenkins' decision not to renew her employment contract. According to his testimony, Jenkins did not learn that Salm had spoken with Representative Ryder until the day of the meeting on which the co-directors informed her that her employment contract would not be re-newed. However, the decision not to re-new her contract was made before the meeting on October 30, 1997.[11]

As for Leininger, she acknowledged during her deposition that she was aware that Salm had spoken to Representative Ryder before October 30, 1997. However, Salm did not ask any follow-up questions to establish a nexus between that knowledge and the non-renewal of her contract, and she has failed to tender evidence from any other source linking Leininger's decision not to renew her employment contract to the fact that she spoke to Representative Ryder about the grant.

Finally, as to Morrison, Salm claims that during the October 16, 1997, telephone conversation between the two, Morrison advised her that she could be fired for speaking with Representative Ryder.[12] This dispute could be a basis to preclude summary judgment.

However, in her memorandum in support of her response to Defendants' motion for summary judgment, Salm points exclusively to the sequence of events as evidence of a causal connection between her speech and the non-renewal of her employment contract, *i.e.,* she spoke with Representative Ryder on October 15, 1997; she told Morrison that she spoke with Representative Ryder on October 16, 1997; and she was informed that her employment contract would not be renewed on October 30, 1997. The Seventh Circuit has repeatedly explained that courts are "barred from 'typically draw[ing] strong conclusions from the mere fact that protected speech may have preceded an adverse em-

---

**11.** Although Salm disputes Jenkins' testimony, her denial is insufficient. In her response to Defendants' statement of undisputed facts on this point, Salm merely asserts that she "believes" that Jenkins was informed about her conversation with Representative Ryder before October 30,1997, but she has offered no proof in support of her assertion.

**12.** Again, Morrison denies that such a conversation ever occurred or that she informed Salm that she could be fired for speaking with Representative Ryder.

ployment decision.'" *Thomsen v. Romeis,* 198 F.3d 1022, 1027 (7th Cir.2000), quoting *Wright v. Illinois Dep't of Children & Family Servs.,* 40 F.3d 1492, 1500 (7th Cir.1994); *see O'Connor,* 985 F.2d at 1368 (holding that "the mere fact that protected speech precedes an employment decision does not create the inference that the speech motivated the employment decision.").

In short, although evidence of a causal link may exist, Salm has failed to provide it to the Court. Salm has not presented an affidavit, a statement, or any deposition testimony from Representative Ryder or his staff regarding what action, if any, he took in response to Salm's contact with him. Salm allegedly obtained her father's assistance in contacting Representative Ryder, but nothing has been offered from him. Finally, according to Salm, Representative Ryder contacted Don Payton at the ISBE on behalf of Salm in an attempt to resolve the situation, but Salm has offered no evidence from Payton to establish a nexus between her speech with Representative Ryder and the failure of Broncato, Morrison, Leininger, and Jenkins to renew her employment contract. Without more than *post hoc ergo propter hoc* allegations, summary judgment on Salm's

First Amendment claim is appropriate. *See Mazaleski v. Truesdell,* 562 F.2d 701, 716 (D.C.Cir.1977)(holding that the fact that a federal employee was terminated after complaining to congressmen about problems at NIOSH would have been insufficient to survive summary judgment on his First Amendment retaliation claim, but the employee presented other evidence of retaliatory intent).

As the Seventh Circuit has noted, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). Salm has failed to "put up" any such evidence.[13] Accordingly, the Court finds that Salm has failed to establish a causal link between her speaking with Representative Ryder regarding the Illinois Transition Consortium and Broncato's, Morrison's, Leininger's, and Jenkins' decision not to renew her employment contract. The Court also finds that no genuine issue of material fact exists and that Broncato, Morrison, Leininger, and Jenkins are entitled to judgment as a matter of law on Count I of Salm's Amended Complaint.[14]

---

**13.** The Seventh Circuit has explained that "conclusory statements, unsupported by the evidence of record", are insufficient to avoid summary judgment. We repeatedly have held that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir.2001), quoting *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993). Salm has failed to point to any evidence in the record that Defendants retaliated against her for speaking to Representative Ryder on a matter of public concern. *Id.*

**14.** Although the Court need not resolve the issue because it has found that Salm has failed to establish a causal nexus between her

speech and the alleged retaliation, Salm's ability to prove that her speech touched on a matter of public concern is suspect. Although Salm testified that she contacted Representative Ryder to seek his assistance in getting the grant back on track and to complain about its administration (and not to complain about the lack of a paycheck as asserted by Defendants), she has offered no support from Representative Ryder regarding the substance of their conversation(s). Moreover, although Salm points to Kim Longwell as an individual who witnessed Morrison's concerns with her speaking with Representative Ryder, Longwell testified: "Well, first, actually, I guess what I want to say is you said did she [Salm] have concerns and were the concerns addressed about the administra-

## B. *FOURTEENTH AMENDMENT*

 The viability of Salm's due process claim depends upon whether or not she maintained a property right in the renewal of her employment contract; if she did, Broncato, Morrison, Leininger, and Jenkins could not refuse to renew her employment contract without due process. *Ulichny v. Merton Community Sch. Dist.*, 249 F.3d 686, 699 (7th Cir.2001). Property interests are not created by the United States Constitution; "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As the Seventh Circuit has explained:

> The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." However, "property," for purposes of the Fourteenth Amendment, "denotes a broad range of interests that are secured by existing rules or understandings." "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" According to Illinois courts, "[a] person has a property interest in his job where he has a legitimate expectation of continued employment ... based on a legitimate claim of entitlement." "To show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." A "unilateral expectation of continued employment does not create an entitlement that the due process clause protects."

*Draghi v. County of Cook*, 184 F.3d 689, 692 (7th Cir.1999)(internal citations omitted). "Thus, a procedural due process claim involves a two-part analysis: First, we determine whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then we assess what process was due." *Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir.2000).

 Salm relies upon the Illinois Personnel Code as creating her legitimate expectation of continued employment, *i.e.*, her property right. Specifically, Salm points to 20 ILCS 415/11 which provides that State employees cannot be fired except for cause and until after being provided a hearing:

> No officer or employee under jurisdiction B, relating to merit and fitness, who has been appointed under the rules and after examination, shall be removed, discharged or demoted, or be suspended for a period of more than 30 days, in any 12 month period, except for cause, upon written charges approved by the Di-

tion of the grant, and actually, I believe the concerns that were expressed were about us not receiving our paychecks, because I believe at that point, we had gone without our paychecks, so the concerns were we going to get paid." Furthermore, Defendants have tendered strong evidence that they were dissatisfied with Salm's performance as the Illinois Transition Consortium's project coordinator prior to her contact with Representative Ry-

der and would not have renewed her employment contract regardless of whether she had spoken to Representative Ryder about the grant. Specifically, Defendants have tendered to the Court a memorandum from Leininger to Broncato in which she expressed concerns that the Illinois Transition Consortium "lacks adequate management, coordination, planning, decision making and fiscal accountability."

rector of Central Management Services, and after an opportunity to be heard in his own defense if he makes written request to the Commission within 15 days after the serving of the written charges upon him.

*Id.*

However, the evidence and the law clearly establish that Salm was a contractual, at-will employee and not an employee of the State of Illinois. Therefore, the Illinois Personnel Code did not apply to Salm, and she cannot rely upon 20 ILCS 415/11 to establish her property right. Because she was an at-will employee, Salm was not entitled to the due process specified by the Illinois Personnel Code (*i.e.*, a hearing and a finding of cause), and Broncato, Morrison, Leininger, and Jenkins could refuse to renew her employment contract for any reason or for no reason at all. *See Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 270 (7th Cir.1995), quoting *Kumpf v. Steinhaus*, 779 F.2d 1323, 1326 (7th Cir.1985)(holding that "[a] contract at will may be terminated for any reason (including bad faith) or no reason, without judicial review...."). The Court bases this finding upon two factors.

■ *First*, Salm entered into a written employment contract when she accepted the position as the project coordinator for the Illinois Transition Consortium. This contract clearly provided that Salm's employment with the Illinois Transition Consortium was for one year in duration beginning September 3, 1996, and ending on August 31, 1997.[15] Although the pre-printed portion of the obligation document (which was part of the contract) referred

to the contract as being a "multiple year contract", that document went on to provide in typewritten script that the contract ran from September 3, 1997, to August 31, 1997. "It is a well-settled principle of contract construction that where a contract contains both general and specific provisions relating to the same subject, the specific provision controls." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 227 (7th Cir.1993), citing *Wilson v. Wilson*, 217 Ill.App.3d 844, 851, 577 N.E.2d 1323, 1328, 160 Ill.Dec. 752, 757 (1991).

The contract also provided that certain schedules attached to the contract were expressly made a part of the contract. These schedules referred exclusively to Salm as a "contractor." In fact, Article 6 expressly provided that "[t]he contractor shall not be a state employee...."

■ Furthermore, Salm's reliance upon Leininger's letter extending an offer of employment to her in order to create a genuine issue of material fact is inapposite. Leininger's letter clearly advised Salm that she, on behalf of the IPCDD, was offering Salm "a one-year contract with the option of extending it to a maximum of five years ..." and that all subsequent annual contracts would be based upon the successful completion of the previous year's contract and the receipt of federal funds. Nowhere in either the contract or Leininger's letter was Salm informed or anyway guaranteed that the duration of her employment would be for five years as she argues in her response to the motion for summary judgment.[16] "Where a writ-

---

**15.** The interim contract which Salm entered into began July 1, 1997, and ended September 30, 1997.

**16.** Furthermore, Salm admitted during her deposition that her employment contract's duration was for one year:

Q. And what were you specifically told regarding your employment as coordinator?

A. I was told that if the grant performances were good enough, that the money would come through, and I would continue as coordinator.

ten agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parole evidence or any other extrinsic aids." *Rakowski v. Lucente,* 104 Ill.2d 317, 323, 472 N.E.2d 791, 794, 84 Ill.Dec. 654, 657 (Ill.1984); *see Sunstream Jet Express, Inc. v. International Air Serv. Co. Ltd.,* 734 F.2d 1258, 1265 (7th Cir.1984), quoting *Pecora v. Szabo,* 94 Ill.App.3d 57, 63, 418 N.E.2d 431, 435–36, 49 Ill.Dec. 577, 581–582 (1981) (noting that "if the contract imports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item, and parole evidence cannot be admitted to add another term to the agreement.").

*Second,* by its language, the Illinois Personnel Code establishes that Salm was not an employee of the State of Illinois. Title 20 ILCS 415/4 provides: "All offices and positions of employment in the service of the State of Illinois shall be subject to the provisions of this Act unless exempted in this or any other Act." *Id.* The Illinois Personnel Code requires employees subject to "jurisdiction B" (*i.e.,* the jurisdiction to which Salm claims she was subject) to pass a written test administered by the Illinois Central Management Services ("CMS"). 20 ILCS 415/8b; 20 ILCS 415/8b.1. In addition, "jurisdiction B" employees are required to contribute to the State's Retirement System, must serve a probationary period, and receive health and dental benefits through the State. 20 ILCS 415/8b.6.

Salm has admitted that she did not apply through CMS, nor did she take a writ-

ten test administered by CMS. She has acknowledged that she never served a probationary period during her employment as the project coordinator of the Illinois Transition Consortium. Finally, Salm has conceded that she did not contribute to the State's retirement system, nor did she receive health and dental benefits through the State.

In fact, Salm's employment contract clearly provides additional monies to her with which she can obtain a health insurance policy through a provider other than through the State's policy/provider. Furthermore, contrary to Salm's assertion, the fact that tax withholdings were made from her paycheck does not preclude the Court from entering summary judgment against her. In her letter extending an offer of employment to Salm, Leininger informed Salm that state and federal taxes would be deducted unless she preferred to pay her own taxes. Thus, the withholdings from her paycheck were merely for Salm's convenience. In addition, when Salm sought unemployment benefits during October 1997, the Family TIES Network—not the State of Illinois—was listed as the last chargeable employer for her claim.

Thus, Salm's allegations that Leininger and Morrison advised her that she was subject to the personnel policies of the IPCDD and the employer listed on her W2 forms do not create doubt regarding her employment status sufficient to preclude the Court from entering summary judgment against her on her due process claim. *See Wolf v. Northwest Indiana Symphony Society,* 250 F.3d 1136, 1140–41 (7th Cir.2001)(holding that "[i]n order to successfully oppose a motion for summary judgment, the nonmoving party (in this case, Wolf) must do more than raise a

---

Q. And that was by Rene Leininger?
A. Yes. That they could only issue a *one-year* contract because that's all the funds that

were in place, but with continuing funding, there would be a continue job for me.
(emphasis added).

'metaphysical doubt' as to the material facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Such is the case here. At best, Salm possessed a unilateral expectation of continued employment which does not create an entitlement which the due process clause protects. *Draghi*, 184 F.3d at 692. Accordingly, the Court finds that Salm cannot rely upon the Illinois Personnel Code to establish her legitimate expectation to continued employment and finds that Broncato, Morrison, Leininger, and Jenkins did not deprive Salm of a property right. Therefore, Salm was not entitled to due process prior to her contract not being renewed, and Broncato, Morrison, Leininger, and Jenkins are entitled to summary judgment on Count II of Salm's Amended Complaint.

### C. *ILLINOIS PERSONNEL CODE*

Finally, Count III of Salm's Amended Complaint alleges that Broncato, Morrison, Leininger, and Jenkins violated her rights contained within the Illinois Personnel Code. Specifically, Salm alleges that Broncato, Morrison, Leininger, and Jenkins failed to renew her employment contract in violation of the Code's whistle blower provision set forth at 20 ILCS 415/19c.1.

However, 20 ILCS 415/19c.1 only applies to employees of the State of Illinois. *See Id.* (providing that "[i]n any case involving any disclosure of information by an em-

ployee which the *employee* reasonably believes evidences . . . .")(emphasis added). As explained *supra*, in her position as the project coordinator for the Illinois Transition Consortium, Salm was not an employee of the State of Illinois. Accordingly, Broncato, Morrison, Leininger, and Jenkins are entitled to summary judgment on Count III of Salm's Amended Complaint.

### V. CONCLUSION

Although her First Amendment claim may have been theoretically cognizable, Salm has wholly failed to meet her burden of establishing a causal link between her speaking with Representative Ryder and Broncato's, Morrison's, Leininger's and Jenkins' decision not to renew her employment contract. Moreover, because it is clear from the record that, as the project coordinator for the Illinois Transition Consortium, Salm was not an employee of the State of Illinois, Salm cannot rely upon the Illinois Personnel Code to create a property right entitling her to due process before Broncato, Morrison, Leininger, and Jenkins decided not to renew her employment contract. Likewise, because she was not an employee of the State of Illinois, 20 ILCS 415/19c.1 does not provide Salm with a cause of action against Broncato, Morrison, Leininger, and Jenkins.

In short, a rational trier of fact, taking the record as a whole, could not find for Salm. *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348. Accordingly, the Court finds that no genuine issues of material fact exist and that Broncato, Morrison, Leininger, and Jenkins are entitled to judgment as a matter of law on each of Salm's claims against them.[17]

---

17. In addition, Salm admitted many of the key issues and facts in this case by failing to timely respond to Defendants' request to admit filed pursuant to Federal Rule of Civil Procedure 36(b). Although summary judg-

ment could be granted based upon these default admissions alone, the Court has combed the record for a genuine issue of material fact and has found none. *See United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th

*Ergo*, Defendants' Motion for Summary Judgment is ALLOWED. Accordingly, summary judgment is hereby entered in favor of Defendants and against Plaintiff on all three Counts of her Amended Complaint.

Cir.1987)(opining: "Defendants attempt to undo the effect of their default admissions by arguing that the affidavits accompanying their untimely filed response to the government's motion for summary judgment raise issues of material fact. This argument fails because a party cannot attack issues of fact established in admissions by resisting a motion for summary judgment."); *see also Jackson v. Health Care Serv. Corp.*, 1995 WL 506022, \*2 (N.D.Ill. Aug.22, 1995) (holding that summary judgment was appropriate because the plaintiff had admitted one of the ultimate issues in the case in his response to the defendant's Rule 36 request to admit).